**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Elbert L. HATCHETT, Defendant–Appellant.**

**Nos. 88–1317, 88–1775.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1988.

Decided Dec. 5, 1988.

Rehearing Denied Jan. 17, 1989.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., Gary R. Allen, Acting Chief, U.S. Dept. of Justice, Appellate Section Tax Div., William S. Rose, Jr., Asst. Atty. Gen.,

Steven W. Parks (argued), Charles E. Brookhart, U.S. Dept. of Justice, Tax Div. Appellate Section, Washington, D.C., for U.S.

Cyril C. Hall, Pontiac, Mich., Kwarma Vanderpuye (argued), Hatchett, Dewalt, Hatchett & Hall, Pontiac, Mich., for Hatchett.

Before KENNEDY, MARTIN and NORRIS, Circuit Judges.

KENNEDY, Circuit Judge.

Appellant Elbert L. Hatchett appeals an order finding him in contempt of court for failure to fully answer interrogatories in this post judgment collection proceeding. Hatchett separately appeals the finding that he failed to purge himself of contempt and ordering his incarceration until he does so.

## I

On July 17, 1987, the United States obtained a default judgment against appellant for tax assessments totaling $797,288.36 plus interest. As a part of its efforts to enforce the judgment, the United States served appellant with interrogatories on August 6, 1987. The present dispute involves interrogatory 13 ("the interrogatory"), which asked:

Have you disposed of any property or assets with a cost or fair market value over $1,000 since January, 1975? If so, please furnish the following information: description of property or asset; date of transfer; fair market value when transferred; consideration received; your relation to transferee.

Appellant neither answered nor objected to the interrogatory within thirty days as required by Fed.R.Civ.P. 33. The United States filed a motion to compel appellant to answer on October 26, 1987. On November 10, 1987, Appellant submitted his first response, which reported "numerous gifts to children, spouse, sister, brother, and friends over the years." The answer did not specify the amounts or dates of any of the alleged gifts. Appellant submitted an amended response on December 31, 1987, which—due to a typographical error by appellant's office—restated the interrogatory as requesting information only for 1987. The amended response stated that Appellant had made no transfers over $1,000 in 1987; it did not address any other years.[1]

The United States deemed appellant's responses inadequate, and on January 4, 1988, a magistrate granted appellee's motion to compel a full and complete answer. Appellant neither appealed nor obeyed the order; rather, he argued the interrogatory's lack of definitions made it "impossible for anyone to answer definitively."[2] In response, the United States filed a motion to show cause why Hatchett should not be held in contempt. At a hearing on February 18, 1988, appellant argued that he could not recall the transactions in question, and requested additional time to obtain bank records. The District Court held appellant in contempt, concluding that he had obviously made no effort whatsoever to comply with the magistrate's order. The court warned that Hatchett would be incarcerated if he failed to comply by April 1, 1988.

On April 1, appellant submitted his third response to the interrogatory, disclosing transfers totaling $46,000. Appellant also learned of a pending Grand Jury investigation of his tax affairs "on or around" April 1, 1988, when a long-time associate received a grand jury subpoena.

A hearing to determine whether Hatchett had purged himself of contempt was held on April 6, 1988. Appellant argued that he had answered the interrogatory to the

---

**1.** Appellant's claim that he relied on this typographical error is implausible given his first answer, which disclosed transfers "over the years."

**2.** Appellant repeatedly asserted that he was unable to determine what information the interrogatory required him to provide. The District Court found that in light of appellant's reputation as a skilled attorney, his claim that he could not understand the meaning of such terms as "asset" or "property" strains credulity. Moreover, the magistrate's order directing Hatchett to answer the interrogatory clearly removed any ambiguity.

"best of [his] knowledge." He also promised to "augment the answer to every extent possible" upon receipt of his bank records which he had ordered. The court ultimately entered an order requiring appellant to supply an amended response and all documents used to prepare the response by June 10, 1988. Appellant's counsel stated that he had no objection to the order. Appellant's counsel also noted that a Grand Jury investigation was underway, but appellant did not assert his Fifth Amendment privilege at the hearing. Appellant subsequently made a motion to vacate or clarify the order, which was denied. The hearing to determine whether appellant had purged himself of contempt was continued to August 1, 1988. On July 21, appellant submitted a supplemental response to the interrogatory, refusing to answer on the ground that it might incriminate him. He also produced a letter from the National Bank of Detroit dated July 11, 1988, which stated the Bank was unable to specify when appellant's records would be available.

The District Court held that appellant had waived his Fifth Amendment right to avoid self-incrimination by failing to assert it until July 21, 1988. In the alternative, the court concluded appellant had made an improper "blanket claim" of privilege. The court rejected appellant's defense of impossibility, because appellant had been granted "plenty of time" to obtain the bank records. Accordingly, the District Court ordered appellant incarcerated for contempt.

## II

■ We conclude the District Court properly held Hatchett in contempt on February 18, 1988. He had made only minimal attempts to respond to the interrogatory at that time. His first response failed to identify the transferees, and did not contain even estimates of the date of transfer or fair market value. The second answer was totally unresponsive.

Appellant's assertion of his Fifth Amendment privilege, however, raises the issues of whether the privilege is applicable, and whether it was waived. Both of these issues turn on appellant's basis for believing his answers might incriminate him.

■ As the District Court observed, "A blanket assertion of the privilege ... is not sufficient...." *In re Morganroth*, 718 F.2d 161, 167 (6th Cir.1983). One claiming the privilege must have "reasonable cause" to fear that disclosure might tend to incriminate him. *Id.* Reasonable cause exists "if an answer to a question, on its face, calls for the admission of a crime or ... furnishes a link in the chain of evidence needed to prosecute." *Id.* In addition, ostensibly innocent questions may appear "dangerous in light of other facts already developed." *Id.*

■ In the present case, it is not self-evident that every disclosure of a disposition of appellant's assets would form a link in the chain of evidence of some crime. Hatchett concededly did not pay his taxes, but he had filed returns, and the Government already has obtained a judgment against him. The interrogatory is apparently aimed at enforcing the judgment, and it is unclear from the record why appellant believes answering the interrogatory might further incriminate him. On remand, Hatchett must explain how the interrogatory raises a reasonable fear of incrimination. A mere blanket assertion of the privilege will not suffice. He has already answered that he made no transfers in 1987. It is not readily apparent what earlier transfers would be incriminating. Some— for example gifts—would seem to pose no threat at all. Therefore, appellant must "seek judicial determination on each claim of privilege" with respect to each specific category or type of transaction he deems incriminatory. *United States v. Schmidt*, 816 F.2d 1477, 1482 (10th Cir.1987). *See also Capitol Prod. Corp. v. Hernon*, 457 F.2d 541, 543–44 (8th Cir.1972) (rejecting blanket refusal to answer interrogatories and remanding to consider the incriminatory potential of each question).

If the District Court concludes that some disclosures are potentially incriminatory, then it must address the issue of waiver.

The United States argues that appellant waived his right by not asserting it within 30 days of service as required by Fed.R. Civ.P. 33, citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981). *Davis* held that a litigant had waived his Fifth Amendment privilege by failing to assert it until fifteen months after the interrogatory had been served. The Court noted that failure to object within the time limit set by Rule 33 generally constitutes a waiver, even where the "objection [is] that the information sought is privileged." *Id.* (citing *United States v. 58.16 Acres of Land*, 66 F.R.D. 570 (E.D.Ill.1975)).

Appellant responds that his failure to object on Fifth Amendment grounds did not constitute a waiver, because—unlike the litigant in *Davis*—he did not have a reasonable fear of self-incrimination during the thirty days after the interrogatories were served.[3] Appellant argues that he did not have reason to fear incrimination until April 1, 1988, when he became aware of a grand jury probe into his affairs.[4] This argument raises questions which cannot be resolved on the record before us. It is impossible to determine whether a reasonable fear of incrimination existed before—or only after—appellant learned of the grand jury investigation without knowing why he believes his answers might be incriminating.

### III

The judgment of the District Court finding appellant in contempt is AFFIRMED. The order finding appellant failed to purge is REVERSED and REMANDED for proceedings consistent with this opinion.

---

**3.** In *Davis* the interrogatories were served "long after [the litigant] knew he was under investigation, long after he had been indicted in the state court, long after his trial *at which he testified in his own behalf,* and months after he had been convicted in the state proceeding." *Id.* at 1160 (emphasis in original).

**4.** A prior grand jury apparently had expired without returning an indictment.